UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS ALVAREZ,<br><br>　　　　Petitioner,<br><br>　v.<br><br>LAMINE N'DIAYE,<br><br>　　　　Respondent. | Civil Action<br>No. 21-13799 (CPO)<br><br>**OPINION** |

**O'HEARN, District Judge.**

　　Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution ("FCI) Petersburg, in Petersburg, Virginia.[1] He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) For the reasons stated in this Opinion, the Court will dismiss the Petition for Petitioner's failure to exhaust his administrative remedies.

## I.　　BACKGROUND

　　This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Fort Dix, in Fort Dix, New Jersey. From approximately February 25, 2021, through March 15, 2021, the Bureau of Prisons ("BOP") placed Petitioner on suicide watch. (ECF No. 23, ¶ 16.) On March 3, 2021, a staff psychologist, Dr. Watjen, reported that Petitioner threatened to harm officer Daniels. (ECF No. 10-4, at 4.) According to Dr. Watjen, Petitioner said, "I will kill Daniels if I am put back in [the Special Housing Unit]. I will murder him." (*Id.*) Suicide watch Officer M. Hartenstine also overheard this statement. (*Id.*)

---

[1] At the time of filing, Petitioner resided at FCI Fort Dix, in Fort Dix, New Jersey.

On March 16, 2021, staff allegedly delivered a copy of the incident report to Petitioner, charging him with threatening another with bodily harm, and advised him of his rights. (*Id*. at 2, 9.) At the end of the investigation, the investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing. (*Id*.)

Thereafter, the UDC received an extension from the warden to conduct the hearing beyond the typical five-day requirement, as Petitioner was on suicide watch. (*Id*. at 11.) On March 25, 2021, the UDC held a hearing where Petitioner stated, "I was off my medication," that this situation was an effect "of not being on medication," and that he did not "recall any of this." (*Id*. at 6.) At the conclusion of the hearing, the UDC referred the incident report to a Discipline Hearing Officer ("DHO"), due to the seriousness of the offense. (*Id*.) Petitioner received a notice of discipline hearing before the DHO, staff advised him of his rights, and he acknowledged those rights. (*Id*. at 7–8.) He requested to present three inmates as witnesses during the hearing and declined to have a staff representative. (*Id*. at 8.)

The DHO held a hearing on April 9, 2021. (*Id*. at 2.) At the hearing, the DHO acknowledged that the UDC hearing did not take place within five days of the incident but noted that the warden had granted an extension. (*Id*. at 3.) Petitioner was again notified of his rights; he waived his right to a staff representative and declined to present documentary evidence. (*Id*. at 2.) Although Petitioner requested to present three inmates as witnesses, the DHO rejected that request. (*Id*.) The DHO found that the witnesses' proposed testimony, that Petitioner was "not in his right state of mind," was irrelevant because "inmates are not certified to assess each other's mental status." (*Id*.) Ultimately, the DHO considered staff and Petitioner's testimony, and found Petitioner guilty of threatening another with bodily harm. (*Id*. at 3–4.) The DHO issued the following sanctions: (1) revocation of 27 days of good conduct time; (2) 30 days of disciplinary segregation;

and (3) the loss of 180 days of telephone privileges. (*Id*. at 4.) Petitioner received the final DHO report on April 16, 2021. (*Id*.)

As to his administrative remedies, Petitioner appealed the DHO's decision on April 18, 2021, with the BOP's regional office, and that that office denied his appeal. (ECF No. 1, at 3.) However, he contends that he did not appeal that decision, because the regional office was "untimely [in denying his] appeal . . . over 30 days" (*Id*. at 5.) According to the BOP's records, the regional office denied Petitioner's appeal on August 6, 2021, and Petitioner never filed an appeal with the BOP's central office. (ECF No. 23, ¶¶ 12, 14–15.)

In July of 2021, Petitioner filed the instant Petition, arguing that the BOP violated his due process rights at various points of his disciplinary proceedings. (ECF No. 1, at 8–12.) Respondent filed an Answer opposing relief, (ECF No. 10), and Petitioner filed a Reply, (ECF No. 14). In terms of relief, Petitioner seeks the restoration of his good conduct time and phone privileges, and the expungement of the incident report. (ECF No. 1, at 11.)

## II. STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v.*

*Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

### III.    DISCUSSION

The Court must first address the issue of exhaustion as it appears that Petitioner has failed to exhaust his administrative remedies. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner may not ordinarily bring a § 2241 petition, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *E.g.*, *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).

Courts require exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761–62; *see also Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Nevertheless, exhaustion is not required where it would not promote these goals, such as where exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm" *Lyons*, 840 F.2d at 205; *see also, e.g.*, *Gambino*, 134 F.3d at 171 (finding that exhaustion is not required where petitioner demonstrates futility).

To determine whether a prisoner has exhausted his administrative remedies, courts look to the agency's applicable grievance procedure and rules, in this case, the BOP. *See Jones v. Bock*,

549 U.S. 199, 218 (2007). Pursuant to the BOP's administrative remedy program, an inmate must generally attempt to informally resolve the issue by presenting it to staff through a BP-8 form. *See* 28 C.F.R. § 542.13. If that fails to informally resolve the issue, then the inmate may submit a BP-9 form to the warden. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with the warden's response may appeal to the regional director with a BP-10, and an inmate who is dissatisfied with the regional director's decision may appeal to the general counsel in the central office, through a BP-11. *See* 28 C.F.R. § 542.15(a). An appeal to the general counsel is the final level of administrative appeal. *Id.* In cases that involve DHO appeals, like the present case, the administrative remedy process begins at the regional director level, and inmates are not required to file a BP-8 or BP-9. *See* 28 C.F.R. § 542.14(d)(2).

With those principles in mind, Petitioner concedes that he has not exhausted his administrative remedies as to his claims. (*See* ECF No. 1, at 3–4.) He alleges that he appealed the DHO's decision by filing a BP-10 on April 18, 2021, with the BOP's regional office, which denied his appeal. (*See id.* at 3; ECF No. 23, at 31–34.) But he then admits that he did not file a BP-11 with the BOP's central office, to appeal the regional office's decision. (*See* ECF No. 1, at 5.) Indeed, the BOP's records confirm that the regional office denied Petitioner's appeal on August 6, 2021, and Petitioner never filed an appeal with the BOP's central office. (ECF No. 23, ¶¶ 12, 14–15.) Prior to receiving the regional office's denial, Petitioner filed the instant Petition, on July 14, 2021. (ECF No. 1, at 12.)

Petitioner appears to argue that he was not required to exhaust his administrative remedies further because the regional office exceeded its 30-day time limit to respond to his appeal. (ECF No. 14, at 3; ECF No. 1, at 4.) He states that the regional office received his appeal on "April 21st, 2021 and the regional office replied on August 6th, 2021 . . . . Which . . . [was] over 30 days. So

that's why [he] filed [his] . . . 2241 in this case." (ECF No. 14, at 3 (cleaned up)). Under the BOP's regulations, however, if an inmate "does not receive a response within the [30 days] allotted" from the regional office, an "inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. As a result, at the expiration of the 30 days, the regional office's failure to respond constituted a denial of Petitioner's BP-10, which then permitted him to file a BP-11 with the central office. *Id*. Thus, the regional office's failure to respond in a timely manner did not prevent Petitioner from exhausting his administrative remedies and does not now excuse him from complying with the exhaustion requirement. *See id*.

Petitioner does not allege any facts that would permit the Court to find that exhaustion would be futile, that requiring exhaustion would subject him to irreparable injury, or any other reason to excuse exhaustion. (*See generally* ECF No. 1; ECF No. 14.) Accordingly, the Court will not excuse Petitioner's failure to exhaust.

## IV.    CONCLUSION

For the reasons above, the Court will dismiss the Petition for his failure to exhaust his administrative remedies. This dismissal is without prejudice to the filing of a new petition pursuant to 28 U.S.C. § 2241, under a new docket number, after Petitioner has exhausted his administrative remedies. An appropriate Order follows.

DATED: September 20, 2024

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**